UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| R.C.N. ASSOCIATES, INC., ET AL. | * | CIVIL ACTION NO. 19-14657 |
| | * | |
| VERSUS | * | SECTION: "J"(1) |
| | * | |
| SERENA CLUB M/V, ET AL. | * | JUDGE CARL J. BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ********************************** | * | |

ORDER AND REASONS

Before the Court is the Motion of R.C.N. Associates, Inc. ("RCN") for Leave to File Third

Party Complaint against Marine Hospitality Corp. ("Marine Hospitality") and James Campbell

(Rec. Doc. 53). Oral argument was held on November 18, 2020, and the Motion was taken under

submission. For the following reasons, the Motion is GRANTED. RCN's Third Party Complaint

shall be entered into the record.

Background

This lawsuit arises out of repair work performed  on the M/V SERENA CLUB, a vessel

owned by Carabella1, LLC ("Cara Bella"). Following written demand, RCN and GC Marine

Electric LLC ("GC") filed this lawsuit on December 17, 2019, seeking to collect on unpaid

invoices for services rendered in the amount of $36,030, as to RCN and $5,850 as to GC. Cara

Bella answered and filed a counterclaim against RCN and a Cross Claim[1] against H.F. Italy s.r.l.

"HF Italy"). Cara Bella alleges that it retained RCN to serve as project manager for the renovation

and upgrade of the M/V SERENA CLUB. Cara Bella alleges that it retained HF Italy to install the

teak deck and paneling on the vessel and that RCN supervised the work. Cara Bella alleges that

the deck was not properly installed and is currently leaking water. Cara Bella has already paid HF

---

[1] Although asserted as a cross-claim, H.F. Italy s.r.l. was not yet a defendant at the time the claim was asserted.

Italy $2,309,064.75, according to Cara Bella, at RCN's instruction. Cara Bella seeks damages for breach of contract, negligent design and/or refurbishment, negligent and/or intentional misrepresentation, professional negligence/negligence, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and breach of express warranty and guarantee.

Cara Bella amended its pleading on June 12, 2020, to add WaveGround, Inc. ("WaveGround"), and H.F. Italy USA ("HF Italy USA") as cross defendants.  It alleges that RCN brought in WaveGround to repair and replace numerous doors for the vessel, but it was later discovered that the doors are not U.S. Coast Guard compliant. Cara Bella also alleges that WaveGround, HF Italy, and HF Italy USA are alter-egos of each other. It alleges on information and belief that these entities comingled funds, had the same employees, operated out of the same offices, and have the same or similar ownership.

According to RCN, its contract with Cara Bella required that RCN locate vendors, assist in the negotiation of contracts, establish purchase order and invoicing processes, and obtain the owner's acceptance of contracted work and materials. RCN says that although HF Italy was originally a direct vendor of teak materials to RCN, it quickly began negotiating with Cara Bella independently. Cara Bella and HF Italy entered into contracts for teak decking, stairs, and handrails; for interior bulkheads, galley, and ceilings; and for repair and replacement of the doors. RCN says it was not a party to those contracts, did not perform design, construction, or installation of any of the associated work,  played no role in negotiating those contracts, and was not asked to ensure that the proposed materials would comply with U.S. Coast Guard regulations. According to RCN, these contracts were all "turn-key," with HF Italy to provide all materials, labor, supervision, and project management.

2

RCN submits that the damage with respect to the bulkheads is a result of Cara Bella's insistence that the M/V SERENA CLUB mirror the interior of the S/V CHAIKA in Moscow, an existing Cara Bella vessel. RCN says it and another vendor advised Cara Bella that only incombustible bulkhead panels could be utilized, not the MDF panels like that on the S/V CHAIKA, but Cara Bella showed the interior of the S/V CHAIKA to HF Italy and approved materials to be supplied by HF Italy including MDF bulkhead panels. RCN asserts that HF Italy assured it, Cara Bella, and Cara Bella's naval architect that the materials would be incombustible and compliant with applicable regulation. RCN points out that HF Italy stopped work on the project many months after RCN had departed the project. RCN submits that until Cara Bella asserted its counterclaim in this litigation, Cara Bella had contended that HF Italy was solely at fault.

Trial in this matter has not yet been set. The court has not set a deadline to complete discovery or to file pleading amendments.

Presently before the court is RCN's Motion for Leave to File Third Party Complaint against Mr. Campbell and Marine Hospitality. RCN submits that documents obtained from Cara Bella show that Mr. Campbell and/or Marine Hospitality assisted Cara Bella in the refurbishment of the M/V SERENA. Cara Bella's discovery responses show that Mr. Campbell negotiated and executed contracts for materials and services to be provided by the M/V SERENA. In its counterclaim against RCN, Cara Bella alleges that the materials and services to be provided under these contracts were defective. Additionally, RCN says that according to Cara Bella's discovery responses, Mr. Campbell served as a marine consultant and project manager for the refurbishment project. In its counterclaim, Cara Bella alleges that RCN as project manager is liable for the failure to properly refurbish the M/V SERENA. RCN alleges that Mr. Campbell negotiated and signed contracts on behalf of Cara Bella for materials that Cara Bella now claims are worthless because they are not

compliant with U.S. Coast Guard regulations. RCN adds that it "appears" Mr. Campbell was contractually obligated to obtain the vessel's Certificate of Inspection ("COI"),[2] and RCN argues that this would mean Mr. Campbell should have ensured the materials to be supplied by contracts he executed would be compliant with U.S. Coast Guard regulations.

RCN notes that it has not been able to determine whether Mr. Campbell individually or as Marine Hospitality was retained for consulting and management services and that, therefore, it cannot say which one or if both have liability here. RCN notes that it issued subpoenas for documents from Mr. Campbell and Marine Hospitality, but neither responded. This issue was discussed at oral argument and counsel for Cara Bella had no information as to whether Mr. Campbell had been paid for his work directly or through his company Marine Hospitality.

RCN's Third Party Complaint alleges that if Cara Bella is successful in its case, its damages were caused by Mr. Campbell and Marine Hospitality for negotiating contracts for substandard work and for "failing to communicate to R.C.N. Associates all materials and work selected for renovations." (Rec. Doc. 53-6, at 5). Accordingly, it alleges that Marine Hospitality and Mr. Campbell are liable to RCN.

After RCN originally filed its Motion for Leave, Cara Bella filed objections into the record. Meanwhile, the Clerk's Office had marked RCN's Motion deficient for failing to state whether the motion was opposed and if so, to include a memorandum in support. In Cara Bella's objection, it argues that RCN's motion does not meet Rule 11 criteria that claims be asserted after a reasonable inquiry. Cara Bella insists that Marine Hospitality had nothing to do with renovation of the M/V SERENA. It admits that it sought Mr. Campbell's advice because of his experience in the cruise

---

[2] RCN cites an email from Mr. Campbell to Konstantin Gaynutdinov, in which Mr. Campbell states "I'm out I just emailed Dimitry to tell him. I'll do the COI inspection when the boats ready either here or NewOrleans as was my original agreement." Ex. L to RCN's Mo. for Sum. J.,  Rec. Doc. 32-15.

vessel/restaurant business. Cara Bella argues that RCN has asserted no basis to hold Mr. Campbell personally liable. Even if RCN's allegations were true, Cara Bella argues that at best, it would give RCN a right to recover against Cara Bella under the doctrine of respondeat superior. Cara Bella argues that Mr. Campbell and Marine Hospitality are not necessary to this litigation and that RCN's attempt to include them is harassment that should subject RCN to sanctions under 28 U.S.C. 1927 for vexatiously multiplying the proceedings.

In its opposition memorandum, Cara Bella notes that RCN did not seek to obtain Cara Bella's consent prior to the filing of its Motion for Leave; it did not do so until after its motion was marked deficient by the Clerk of Court. Cara Bella argues that RCN has failed to satisfy Rule 11 because its allegations have no evidentiary support and will not have evidentiary support upon further investigation or discovery. Cara Bella argues that it was not a reasonable inquiry to go to the Florida Secretary of State's website and find that Mr. Campbell is the registered agent for Cara Bella. Cara Bella concedes that Mr. Campbell's name appears in two interrogatory responses, but argues that these do not support RCN's claims. In one, Mr. Campbell is identified as a current member, officer, or director of Cara Bella. In the other, he is identified as one of the people negotiating the contract between HF Italy and Cara Bella. Cara Bella explains that Mr. Campbell's only involvement in the negotiations was that he signed one of the contracts on the direction of Cara Bella's owner.[3]

Cara Bella argues that despite RCN's claim that Mr. Campbell negotiated the contracts, RCN has long known this is not true. Cara Bella points to the August 3, 2020, declaration of Mr. Freund, president of HF Italy, which RCN submitted with its Motion for Summary Judgment. In

---

[3] Of note, this explanation is not provided in the interrogatory response. Indeed, in Cara Bella's interrogatory response, Mr. Campbell is included on both the list of people who negotiated the contracts and the list of people who executed contracts.

that declaration, Cara Bella says that Mr. Freund "makes clear that he, in his capacity as President of HF Italy, went to Moscow and personally negotiated the contracts with Cara Bella's owners in Moscow."[4] (Rec. Doc. 57, at 6). Cara Bella argues that RCN knew that Marine Hospitality's principal place of business was in Fort Lauderdale. It says that Mr. Campbell shares the same address. And it says that RCN knows that the contracts were negotiated directly, face to face, by Mr. Freund in Moscow.

In reply, RCN underscores that Cara Bella has admitted that Mr. Campbell was a consultant. It argues that the evidence shows that Mr. Campbell had a broad, longstanding, and continuous involvement in the project. For example, he was referred to as a member of the Serena Club team, he made decisions on aspects of the project, he was involved with plans for engine servicing, he approved payments for equipment rental, and he was involved with designing exterior bulkheads. RCN attaches emails supporting each of these assertions.

RCN argues that Mr. Campbell "appears to have been an authority equal to if not above that of RCN." For example, RCN says that it sought approval for work from Mr. Campbell and that when it recommended a contractor for the interior portion of the project, it sent the quote to Mr. Campbell. RCN cites an email where Mr. Campbell references an offer to take over the repair project and include it in his advisory fee. The January 2019 email is over two single-spaced pages and references Mr. Campbell's recommended ship engineer and welding crew, Mr. Campbell's observations about the problems with the project and with RCN's principal Tassos Kalentzis, who is described as a thief, liar, and manipulator. RCN also cites documents purporting to show that Mr. Campbell was involved in the project after January 2019 (when he says he stopped working

---

[4] The declaration actually states that Mr. Freund travelled to Moscow "to meet with representatives of Cara Bella." (Rec. Doc. 57-4, at 2).

on the project). RCN further cites an August 3, 2020, email from Cara Bella's on-site supervisor Denis Vinogradov (translated with google translation), which says:

> Thassos was the manager who oversaw the refurbishment of the Ship Speculation in New Orleans. His technical knowledge was always respected, Thassos was recommended by Maxim Pravalinsky. ***But, James Kumble believed that it was more correct for him, and not for Thassos, to control financial and contractual issues. Therefore, when Thassos offered HF Italy and Johnny Freund as a contractor, James Kumble took over all the technical issues and signed a contract with Johnny and HF Italy***.

(emphasis added). RCN says "Thassos" must be Tassos Kalentzis, principal of RCN, and James Kumble must be James Campbell. It submits that this email from Cara Bella's own representative is enough to provide it a good faith basis to allege that Mr. Campbell planned, designed, negotiated, and executed contracts on behalf of Cara Bella.

With regard to Cara Bella's argument that the interior and decking contracts were negotiated between HF Italy and Cara Bella in Moscow, RCN points out that in Cara Bella's discovery responses, it represented that both of those contracts were negotiated in New Orleans and that RCN and Mr. Campbell participated in their negotiation. RCN insists its filing is far from a "knee-jerk" reaction to losing its motion for summary judgment, as Cara Bella contends.

RCN also responds to Cara Bella's request for Rule 11 Sanctions. It argues that the evidence it has submitted requires that this request be overruled. RCN suggests that Cara Bella is seeking sanctions because in the summary judgment briefing it pointed out that Cara Bella made representations that were not true. It adds that Cara Bella's vicarious liability argument holds no water because a registered agent who signs a contract on behalf of his principal is doing so outside of the scope of such agency as a matter of law. At oral argument, Cara Bella's counsel would not agree to Cara Bella's vicarious liability for the actions of Mr. Campbell. Counsel later stated that Mr. Campbell was employed by Cara Bella and Cara Bella would, therefore, be subject to vicarious

liability. Counsel for RCN responded that there is no evidence that Mr. Campbell is an employee of Cara Bella and argued that Cara Bella would not be vicariously liable for Mr. Campbell's acts as a contractor.

In surreply, Cara Bella says that the evidence cited by RCN merely shows what it does not contest, that Campbell was involved in the renovation of the vessel. RCN's claim, Cara Bella points out, is that Campbell negligently negotiated the contracts thereby harming RCN. Cara Bella argues that none of the evidence cited by RCN shows that Campbell was involved in the negotiation of the contracts. It also argues that the Vinogradav email is inadmissible as there is no certification that the translation is correct and there is no explanation of the email's origin.

<u>Law and Analysis</u>

1. *Motion for Leave to File Third Party Demand*

   a. *Standard*

A defending party may file a complaint against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The defending party must obtain leave of court if the third party complaint is not filed within 14 days after it served its original answer. <u>Id.</u> The court has wide discretion in determining whether to allow the filing. <u>McDonald v. Union Carbide Corp.</u>, 734 F.2d 182, 184 (5th Cir. 1984).

> In exercising this wide discretion, courts have considered a number of factors, including effectuating the purposes of Rule 14 (avoiding circuity of action, eliminating duplication of suits on closely related matters and promoting judicial economy); whether other parties will be prejudiced; the unreasonableness of delay by the party asserting the third-party complaint; lack of substance to the third-party claim; and whether the action will become unduly complex or unduly delayed by permitting the impleader.

Marquette v. S. Fid. Ins. Co., No. CIV.A. 14-2311, 2015 WL 5083617, at *2 (E.D. La. Aug. 26, 2015); see Cedar Ridge, LLC v. Landmark Am. Ins. Co., No. CIV.A. 13-672, 2013 WL 4854388, at *2 (E.D. La. Sept. 10, 2013).

> b.  *RCN's Proposed Pleading*

Cara Bella does not discuss Rule 14(a), but it essentially argues that leave to file a third party complaint should be denied because the claims against Mr. Campbell and Marine Hospitality are meritless and because the proposed third parties will be prejudiced by having to defend meritless claims. RCN's claim is based on a theory that Mr. Campbell and/or Marine Hospitality served as consultants for Cara Bella in negotiating the contracts at issue in this case and in the performance of such contracts. In its discovery responses, Cara Bella listed Mr. Campbell as a project manager. Cara Bella also listed Mr. Campbell as a person involved with both negotiating and executing the contracts at issue in this litigation.

Yet Cara Bella now submits a declaration of Mr. Campbell who asserts he was not involved in the negotiations, though he does admit to being involved with the renovation project by responding to inquiries by Cara Bella about Coast Guard regulations until January 2019. Cara Bella also cites the Freund declaration and overstates its contents. It is true that Mr. Freund says he negotiated the contract in Moscow. He does not say that he did so only with the owners of Cara Bella, he refers to representatives. Cara Bella argues that RCN knows that Mr. Campbell was not in Russia at the time the contracts were negotiated, but it relies on the Campbell Declaration (which RCN did not have until Cara Bella filed it into the record with its opposition) and the Freund Declaration (which does not refer to Mr. Campbell and does not identify who was present at the negotiations in Moscow). The court finds this factual dispute about Mr. Campbell's involvement in the negotiations is not properly resolved on the pleadings alone. A party cannot defeat a

complaint against it merely by filing a self-serving declaration denying the allegations of the complaint. Importantly here, Cara Bella's own discovery responses identify Mr. Campbell as an individual negotiating the contracts.

Cara Bella also argues that to the extent the claims in RCN's third party complaint are true, this would merely result in Cara Bella's vicarious liability for the actions of Campbell and Marine Hospitality. RCN denies this could be true because, it says, executing a contract is outside the scope of his authority as a registered agent. RCN also argued at oral argument that there is no evidence that Mr. Campbell was an employee of Cara Bella, as Cara Bella's counsel represented for the first time in oral argument. Indeed, his description as a consultant and his use of a Marine Hospitality email address seems to support the conclusion that he was a contractor. He is also referred to as a Project Manager by Cara Bella in its discovery responses. Mr. Campbell's email references an offer to take over the repair project and include it in his "advisory fee," which does not suggest employee status. Nor does his statement in that email that "I am spending more time on your business than on my own." Importantly, Cara Bella would not concede liability for the actions of Mr. Campbell. At this point, vicarious liability cannot defeat RCN's proposed third party complaint.

The court concludes that RCN must be granted leave to amend. RCN's proposed Third Party Complaint is closely related to the claims raised by Cara Bella in this lawsuit. There is no indication that joining Mr. Campbell and Marine Hospitality will unnecessarily complicate the litigation. With no trial yet set, the litigation is in its early stages and no party would be prejudiced by the addition of a party. Although Mr. Campbell and Marine Hospitality may ultimately be able to defeat RCN's claims, there is a sufficient factual basis for the Third Party Complaint to proceed

at this stage.  Accordingly, the court finds that justice requires that RCN be granted leave to file

its Third Party Complaint.

      *c.  Rule 11 Sanctions*

By signing and filing a pleading, an attorney:

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;[and]
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines

that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney,

law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Rule 11 provides a procedure for a party filing a motion for sanctions:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion

Id.  R. 11(c)(2). The court may also, on its own, require a party or attorney to show cause why

sanctions under Rule 11 should not be imposed.

Apparently in lieu of following the procedure for a motion for sanctions under Rule

11(c)(2), Cara Bella hopes to cause this court to require RCN to show cause why sanctions should

not be imposed for a violation of Rule 11(b).  Requesting Rule 11 sanctions be imposed is

extraordinary and certainly, in the instant situation, completely unsupported.  Contrary to Cara

Bella's insistence that RCN had no evidentiary support to file a claim against James Campbell and/or Marine Hospitality, RCN provided ample such support.  Strenuously downplaying his role, Cara Bella admits only that it sought Mr. Campbell's advice because of his experience in the cruise vessel/restaurant business. RCN provided proof of Mr. Campbell's significant involvement, including a series of emails where Mr. Campbell is included as part of the "Serena Club Team." It produced one detailed email written by Mr. Campbell regarding the work, his involvement, accusations as to who was failing and why, and what could be done to remedy the problems.

As to Cara Bella's insistence that James Campbell had no role in negotiating the HF Italy contract, admitting only that he signed it, and indeed, accusing RCN of bad faith in stating Campbell negotiated the contract, Cara Bella has itself to blame for any confusion: it specifically listed James Campbell as having negotiated that contract. It separately listed him as having executed the contract.

As to Cara Bella's accusation that RCN did so little investigation into the role of James Campbell and/or Marine Hospitality that its third party complaint is sanctionable, RCN certainly tried.  In the summer, it sent subpoenas to both; they refused to respond.

As to Cara Bella's constantly morphing characterization of James Campbell's role, it remains completely unclear what Mr. Campbell was on this project, and whether he was acting as James Campbell or as the principal of Marine Hospitality.  In its pleadings, Cara Bella itself described him as a consultant, and a project manager.  In another Cara Bella interrogatory answer Mr. Campbell is identified as a current member, officer, or director of Cara Bella. In open court, he was suddenly pronounced an employee of Cara Bella.  Yet despite lodging serious accusations against RCN that it both failed to sufficiently research Mr. Campbell's role before filing this

pleading and has an ill motive for doing so,[5] Cara Bella had not done its due diligence to prove any of this.  Surely Cara Bella has access to the documents reflecting its relationship with Mr. Campbell and/or Marine Hospitality such as contracts, agreements, correspondence, bills, invoices, W-2's or 1099's.  It presented no such proof and could not answer questions regarding how and in what capacity Mr. Campbell worked and was paid.

As the court's discussion of the facts above make clear, while the facts asserted may ultimately prove to be false, and/or its claims against James Campbell or Marine Hospitality be unsupportable, RCN had a factual basis for asserting them sufficient to avoid Rule 11 sanctions. Cara Bella's request for Rule 11 sanctions is denied.

<u>Conclusion</u>

For the foregoing reasons, RCN's Motion Leave to File Third Party Complaint (Rec. Doc. 53) is GRANTED. RCN's Third Party Complaint shall be entered into the record.

New Orleans, Louisiana, this <u>20th</u> day of November, 2020.

Janis van Meerveld
United States Magistrate Judge

---

[5] Cara Bella accuses RCN and its counsel of acting in a "cavalier and vindictive manner," being "knowingly misleading," "making stuff up," "intentionally ignoring facts," "making giant and ill informed leaps," "wielding its power to implead parties," "failing even basic law-student-level tenants of agency and corporate law," "torturing the principles of corporate law," "for no other purpose than to harass and needlessly increase the cost of litigation," and "designed to make life miserable for Mr. Campbell," as a "knee jerk vindictive response and not filed in good faith." Even if Cara Bella were right that these were baseless claims, such accusations are overwrought.  Given that it is Cara Bella which has failed to support its claims and accusations, the court is all the more disturbed by this extreme language. Prior to requesting Rule 11 sanctions be imposed against an opponent, the court urges Cara Bella's counsel to be sure that they, too, are meeting their obligations.